# APPENDIX A

# JAMES S. THOMSON
## Attorney and Counselor at Law

AAron S. Jones - Paralegal - Office Manager
Ethan H. Stone - Associate Attorney

September 9, 2020

**VIA EMAIL AND MAIL**

David Anderson
Philip Kopczynski
United States Attorney
Assistant United States Attorney
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102-3495
David.L.Anderson@usdoj.gov
Philip.Kopczynski@usdoj.gov

**Re:    United States v. Carrillo, et al, N.D. Cal. Case No. 4:20-cr-00265-YGR
         Death Penalty Proffer Meet and Confer**

Dear Messrs. Anderson and Kopczynski,

      We write in response to your September 4, 2020 email, your July 30, 2020 letter, our discussion at the August 14, 2020 reverse proffer session, our respective positions noted at the August 19, 2020 status conference and your August 21, 2020 email - all addressing the timing of our death penalty decision submission.  United States Justice Manual (USJM), section 9-10.080 and subsection F.

      First, given our exchanges on this issue to date (both at the reverse proffer and at the status conference), I am left with the impression that I have not fully conveyed the obstacles we face and the reasons why we cannot prepare a decision submission to you in September 2020.  For that, I apologize.

      To assist your understanding of the magnitude of the task we must undertake, we have attached relevant materials for your review and consideration.  These materials inform all of us of the required standards capital defense counsel must meet to fulfill their Sixth Amendment mandate to provide effective assistance of counsel.  See Attachments A, B, C and D: American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Revised Edition, February 2003) (Attachment A); C. Haney, Evolving Standards of Decency: Advancing the Nature and Logic of Capital Mitigation, Hofstra Law Review (Spring 2008) Attachment B; R. Stetler, The Past, Present, and Future of the Mitigation Profession: Fulfilling the Constitutional Requirement of Individualized Sentencing in Capital Cases (Summer 2018) (Attachment C); and American Bar Association Supplementary Guidelines for the Mitigation Function of the Defense Team in Death Penalty Cases (2008) (Attachment D).

---

732 ADDISON STREET, SUITE A  ■  BERKELEY, CALIFORNIA  94710  ■  TEL 510.525.9123  ■  FAX 510.525.9124

AUSA Letter
Page 2

Second, while we appreciate your attempt to "move our conversation forward here in email", the fact that so much has been lost to date in the jumble of back-and-forth exchanges highlights the need for a focused, face-to-face meeting on this very important issue. You observed in your July 30th letter that you will focus on the facts charged in this case in consideration of aggravation. To that end, you relayed an ability to conduct that analysis because of your immediate involvement with the investigation on the night of the shooting.

For our part, the mitigation investigation is very different than the fact investigation you describe. Mitigation requires a comprehensive investigation into Sergeant Steven Carrillo's social history, medical history and, here, military history. Suffice it to say that it is no small task in the simplest of cases and this case is far from simple. That is precisely why the USJM provides that "the United States Attorney or Assistant Attorney General shall give counsel for the defendant a reasonable opportunity to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty." USJM section 9-10.080.

Third, we are not aware of any mandate that requires you to submit your local recommendation to the Department of Justice (Department) by September 28, 2020. We have reviewed the USJM as it relates to the prosecution of capital crimes. See USJM Section 9-10.000 - Capital Crimes. We did not find a deadline for the local submission. Rather, the Manual provides that "[t]he overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case." Section 9-10.030. "Fairness requires all reviewers to evaluate each case on its own merits and on its own terms." 9-10.140. That is all that we are asking to do on behalf of Sergeant Carrillo.

The only time lines we found addressed the timing of filing a death penalty notice with the court and tied to a trial date. Section 9-10.060 provides that "[i]n the absence of a court-established deadline for the Attorney General's death penalty decision, the United States Attorney or Assistant Attorney General must make the submission *sufficiently in advance of trial* to allow for both the 90-day time period typically needed for the nonexpedited decision process plus any additional time necessary to ensure that a notice of intent to seek the death penalty is timely filed under 18 U.S.C. § 3593(a)." (Emphasis added). In turn, section 3593(a) requires that when "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, *a reasonable time before the trial*" provide "a notice— (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death...." (Emphasis added).

Indeed, a requirement that we make our submission in such a short time would go against every other capital case that has been prosecuted in the Northern District. We are familiar with the litigation of capital cases prosecuted in this district going back to *United States v. Tex Hernandez et al*, (N.D. Cal Case No. 00-cr-00654-CRB (2000)) and are aware of the prosecution of capital cases in jurisdictions throughout the United States. We are not aware of any case where the Department has required the local US Attorney to make a recommendation in such a short time frame.

AUSA Letter
Page 3

Please recall that I was not appointed until July 2, 2020 and Kathryn Ross was not appointed until September 1, 2020. Also recall that you have delivered five productions of discovery: July 17, 2020 and August 4, 14, 19, and 26, 2020. In total, you have produced 81,170 pages, 4,559 photos, 123 videos, 13 audios, and 8 device extraction folders. The last production was not delivered to us until August 27, 2020. Finally, recall that our case budget was not approved by the Ninth Circuit until August 10, 2020, which prevented us from even beginning the case investigation, or retaining and initially consulting with experts and related service providers.

Against the backdrop of precedent in this District, and nationally, the time frame you propose is an outlier. We wonder if this unique posture comes at the direction of the Department, because, since the beginning, this case has been singled out by members of the Executive Branch, including a spotlight on it by Vice President Pence in his acceptance speech at the Republican National Convention last month.

Fourth, other than providing you with the time lines established in other cases in the district, we cannot truly give you an estimate of when we "would be ready to make a local defense mitigation presentation." To do so at his point, would be foolish and unprofessional. We are at the beginning of the case. We have yet to meet our client in person. Ms. Ross and I have yet to meet in person. We have yet to have a team meeting in person. We only recently received the initial production of mitigation discovery from you. Ms. Ross has not received the discovery as yet due to the time taking to reproduce the hard drive and due to the outstanding discovery matter (see Discovery Letter #9) and I am not close to having read even the smallest amount of discovery produced to date. In short, we have just begun our work. Were we to provide you with an uninformed estimate of when we could produce a decision submission at this point, might well compel us to turn over our bar cards at the same time.

Please understand that this is not a flippant observation, but the reality of capital defense practice. For example, in *Andrus v. Texas*, ___U.S. ___, Slip Opinion No. 18-9674 (June 15, 2020), the Supreme Court just recently found trial counsel ineffective under *Strickland v. Washington*, 466 U. S. 668 (1984). In finding so, the Court held:

> "It is unquestioned that under prevailing professional norms at the time of [Andrus'] trial, counsel had an 'obligation to conduct a thorough investigation of the defendant's background.'" *Porter v. McCollum*, 558 U. S. 30, 39 (2009) (per curiam) (quoting *Williams v. Taylor*, 529 U. S. 362, 396 (2000)). Counsel in a death-penalty case has "'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Wiggins v. Smith*, 539 U. S. 510, 521 (2003) (quoting *Strickland*, 466 U. S., at 691). Slip Opn. at 8.

In *Andrus*, the Court found that trial counsel "fell short of his obligation in multiple ways: First, counsel performed almost no mitigation investigation, overlooking vast tranches of mitigating evidence. Second, due to counsel's failure to investigate compelling mitigating evidence, what little evidence counsel did present backfired by bolstering the State's aggravation case. Third, counsel failed adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation. Taken together, those deficiencies effected an unconstitutional abnegation of prevailing professional norms." *Andrus*, Slip Opn. at 9. While *Andrus* addresses the effectiveness of counsel in the

AUSA Letter
Page 4

trial setting, the same guiding principles apply at the decision submission stage. Indeed, it may be more important at this threshold life or death stage.

In the age of COVID, where we have become accustomed to using "zoom" as a substitute for in person meetings, it bears emphasis that the American Bar Association's *2008 Supplementary Guidelines* require in person mitigation investigation. "Team members must conduct in person, face-to-face, one-on-one interviews with the client, the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death. Multiple interviews will be necessary to provide the client with a defense in accordance with constitutional guarantees relevant to a capital sentencing proceeding." ABA*, Mitigation Guideline 10.11 (c)*. Attachment D.

Fifth, we are glad to give you an "indication of what [you] would learn from []our presentation if [you] were to push back the deadline", if we could do so. We can only say now what you, and the public, already know - Sergeant Carrillo has no criminal history and has devoted his professional life to the service of our country. Beyond that, we cannot tell you what we cannot possibly know. To answer your question, we would need to have formulated our mitigation case, interviewed witnesses across the United States and at various locales outside the United States, had experts evaluate the case and evidence and our client. None of which has been started in any meaningful way.

As mentioned, the Manual requires that you give us "a reasonable opportunity to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty." Section 9-10.080. Only "[a]fter the conclusion of a reasonable period of time," are you required to 'submit to the Assistant Attorney General for the Criminal Division through the Capital Case Section [your] recommendation whether to seek the death penalty, along with [various] materials...." Id.

The listed materials you are required to provide speak volumes about why the timing is controlled by reasonableness, not arbitrary deadlines. Your submission must include a death penalty analysis, which requires the identification "applicable mitigating factors under 18 U.S.C. § 3592(a)" and your "conclusion on whether all the aggravating factor(s) found to exist sufficiently outweigh all the mitigating factor(s) found to exist to justify a sentence of death, or in the absence of mitigating factors, whether the aggravating factor(s) alone are sufficient to justify a sentence of death." USJM, section 9-10.080(4). You are also required to provide: "Materials provided by defense counsel. Any documents or materials provided by defense counsel to the United States Attorney or Assistant Attorney General in the course of the United States Attorney's Office's or Department component's death penalty review process should be provided." Section 9-10.080.

Morever, "[i]n determining whether it is appropriate to seek the death penalty, the United States Attorney or Assistant Attorney General, the Capital Review Committee, the Deputy Attorney General, and the Attorney General will determine whether the applicable statutory aggravating factors and any non-statutory aggravating factors sufficiently outweigh the applicable mitigating factors to justify a sentence of death or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. Reviewers are to resolve ambiguity as to the presence or strength of aggravating or mitigating factors in favor of the defendant. The analysis employed in weighing the aggravating and mitigating factors should be qualitative, not quantitative: a sufficiently strong aggravating factor

AUSA Letter
Page 5

may outweigh several mitigating factors, and a sufficiently strong mitigating factor may outweigh several aggravating factors." USJM, section 9-10.040 C.

      As I mentioned at the reverse proffer session and during the status conference, the place to best present the case for life is with the local United States Attorney - you. Without your recommendation, there is little to no chance of convincing the Department to not seek death in this case. And, once the death decision is made, it is a rare case when the Department will overturn it's decision with the presentation of a supplemental decision submission. And, the process for doing so, is an uphill battle at best. See USJM section 9-10.160 - Withdrawal of the Notice of Intention to Seek the Death Penalty.

      We look forward to meeting and conferring with you in zoom person on this very important - truly life and death - matter.

Sincerely,

/s/ Kathryn Ross

/s/ James Thomson

JAMES S. THOMSON
KATHRYN ROSS
Attorneys for Defendant
STEVEN CARRILLO