1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney

2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  JONATHAN U. LEE (CABN 148792)
   Assistant United States Attorney

5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-7200
7      FAX: (415) 436-6748
       Email:  jonathan.lee@usdoj.gov

8
   Attorneys for United States of America

9
                     UNITED STATES DISTRICT COURT

10
                   NORTHERN DISTRICT OF CALIFORNIA

11
                          OAKLAND DIVISION

12

13  UNITED STATES OF AMERICA,            )  CASE NO. CR 20-265 YGR
                                         )
14          Plaintiff,                    )  UNITED STATES' SENTENCING
                                         )  MEMORANDUM REGARDING STEVEN
15     v.                                 )  CARRILLO
                                         )
16  STEVEN CARRILLO and ROBERT ALVIN      )  Date:   June 3, 2022
    JUSTUS, JR.,                          )  Time:   10:30 a.m.
17                                        )  Court:  Courtroom 4, 17th Floor, San Francisco
            Defendants.                   )  Before: Hon. Yvonne Gonzalez Rogers
18

19

20

21

22

23

24

25

26

27

28

## I.      Introduction

The United States submits this memorandum in support of the parties' joint recommendation that the Court impose sentence on defendant Steven Carrillo as follows:  a term of imprisonment of 41 years, followed by a lifetime term of supervised release, and restitution in an amount to be determined but per the parties' agreement no less than $50,000.

The recommended sentence punishes Carrillo for his criminal conduct, promotes respect for the law, and provides deterrence.  A term of 41 years imprisonment also accounts for Carrillo's early acceptance of responsibility for his actions, his stated desire to not put the victims of his conduct through protracted litigation, and his lack of prior criminal history.  Finally, the recommended sentence will allow for progress toward closure for the parties, victims, and community.

## II.     Factual Background[1]

At approximately 9:44 p.m. on May 29, 2020, defendant Carrillo and co-defendant Robert Justus carried out a premeditated attack at the Ronald V. Dellums Federal Building and United States Courthouse in Oakland, California.  While Justus drove, Carrillo opened fire on two security guards with an assault rifle from inside a van.  The guards were on duty at a small security guard outpost near the corner of 12th and Jefferson Streets, protecting the access ramp to the building's parking garage.  One guard died from his wounds; the other guard was seriously wounded.

Eight days later, at approximately 2:24 p.m. on June 6, 2020, Carrillo opened fire on a group of Santa Cruz County deputies standing near patrol cars outside his residence in Ben Lomond, California.  One deputy died immediately from gunshot wounds and others were wounded by gunfire.  Carrillo also threw a pipe bomb at the deputies.  Minutes later, Santa Cruz County law enforcement officers arrested Carrillo in possession of the assault rifle that he had used in the May 29 shooting in Oakland.

Five days after Carrillo's arrest by Santa Cruz authorities on June 6 and thirteen days after the attack in Oakland, defendant Justus was arrested by the FBI on June 11, 2020.

## III.    Procedural Background

On June 16, 2020, the United States filed a criminal complaint charging Carrillo with Murder of

---

[1] The affidavit supporting the criminal complaint sets forth the factual background in detail.  Dkt. No. 1.

a Person Assisting an Officer or Employee of the United States Government in violation of 18 U.S.C. § 1114(1) and with Attempted Murder of a Person Assisting an Officer or Employee of the United States Government in violation of 18 U.S.C. § 1114(3).  Dkt. No. 1.

On June 17, 2020, the United States filed a Writ of Habeas Corpus ad prosequendum as to Carrillo, who was in state custody following his arrest in Santa Cruz County.  Dkt. No. 2.  The Court granted the writ.  Dkt. No. 4.  On June 22, 2020, the U.S. Marshal Service executed the warrant for Carrillo's arrest.  Dkt. No. 7.  On June 23, 2020, defendant Carrillo made his initial appearance on the criminal complaint, via the writ.  Dkt. No. 6.  The United States moved for detention, and the Court remanded Carrillo.  *Id*.

On June 25, 2020, the Grand Jury returned an Indictment charging defendant Carrillo with Murder of a Person Assisting an Officer or Employee of the United States Government in violation of 18 U.S.C. §§ 1114(1), 1111, Attempted Murder of a Person Assisting an Officer or Employee of the United States Government in violation of 18 U.S.C. §§ 1114(3), 1111, and Aiding and Abetting in violation of 18 U.S.C. § 2(a).  Dkt. No. 12.  The Indictment also charged defendant Justus with murder, attempted murder, and aiding and abetting.  *Id*.

On January 31, 2022, the United States filed a Notice of Intent Not to Seek the Death Penalty as to Defendants Carrillo and Justus.  Dkt. No. 124.

On February 11, 2022, the United States filed a Superseding Information as to defendant Carrillo, charging Count One - Use of a Firearm in Furtherance of a Crime of Violence Resulting in Death in violation of 18 U.S.C. §§ 924(j)(1) and 2 and Count Two - Attempted Murder of a Person Assisting an Officer or Employee of the U.S. Government in violation of 18 U.S.C. §§ 1114(3), 1111, and 2.  Dkt. No. 133.  Carrillo filed a waiver of indictment.  Dkt. No. 130.

Later that same day, February 11, 2022, the Court presided over a change of plea hearing.  Dkt. Nos. 128 (plea agreement), 132 (minutes), 135 (amended minutes) and 140 (second amended minutes).  The plea was signed and entered in Court.  *Id*. at 140.  At the conclusion of the hearing, the Court set this sentencing hearing for June 3, 2022, at 10:30 a.m.

IV.    **Acceptance of Responsibility and Plea Agreement**

By December 2020, Carrillo informed the U.S. Attorney's Office that he accepted responsibility

for his criminal conduct in Oakland on May 29, 2020.

Carrillo and the United States later entered into a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Carrillo agreed to plead guilty to both counts in the Superseding Information, and the parties agreed to a sentence of 41 years imprisonment, a lifetime term of supervised release with the standard and special conditions to be set by the Court, restitution in an amount to be set by the Court but no less than $50,000, and a $200 special assessment.

Paragraph 2 of the parties' plea agreement set forth the factual basis of Carrillo's plea.  In summary, Carrillo agreed in paragraph 2 that he deliberately and intentionally attacked two security officers at the Oakland Federal Courthouse on May 29, 2020.  Carrillo admitted that he intended to kill the two officers and acted with premeditation by firing on the officers from a van driven by another individual.  Carrillo also admitted that during the months before the shooting, he aligned himself with an anti-government ideology and wanted to carry out violent acts against federal law enforcement in particular.  Carrillo posted messages and writings on social media sites during the weeks leading up to the shooting, describing the timing as favorable for the destruction of the government.  On May 29, 2020, Carrillo posted social media comments referring to the ongoing protests over the killing of George Floyd, and he made plans to travel to an area in Oakland where protests were expected that night. Carrillo admitted that he went to the protests with another individual, and Carrillo brought firearms and incendiary devices in a van driven by the other individual.  After observing the protests, federal building and courthouse, and surrounding area, at approximately 9:44 p.m., while the other individual drove the van, Carrillo fired approximately 19 shots at the two security officers, killing D.U. and wounding Victim 2 with life-threatening and permanent injuries.  At the change of plea hearing on February 11, 2022, at the Court's direction, Carrillo read the entirety of Paragraph 2 in open court.

## V.   Discussion

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive

1  reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

2  **A.      Sentencing Guidelines**

3  Defendant Carrillo's Total Offense Level is 43.  His Criminal History Category is I.  Therefore,

4  the Guideline Sentencing Range applicable to Carrillo is Life.

5  **B.      Primary Jurisdiction**

6  Here, Carrillo has been charged by federal and state authorities for his conduct on May 29, 2020,

7  and June 6, 2020, respectively.  State authorities arrested Carrillo in Ben Lomond, California on June 6,

8  2020.  Therefore, the state obtained primary jurisdiction because it was the first sovereign to arrest

9  Carrillo.  *Johnson v. Gill*, 883 F.3d 756, 761-762 (9th Cir. 2018) (citations omitted).  In anticipation of

10  this hearing, the undersigned contacted the Bureau of Prisons (BOP) and confirmed that in the normal

11  course of BOP's operations, BOP will not receive Carrillo for service of his federal term of

12  imprisonment prior to his service of any state sentence.  In addition, the undersigned confirmed with the

13  Santa Cruz County District Attorney's Office that the state authorities, knowing about primary

14  jurisdiction, will not take any step to change the fact that Carrillo will serve any state sentence in a state

15  prison first, before any transfer to the Bureau of Prisons.  Therefore, defendant Carrillo will remain in

16  the state's primary jurisdiction until the expiration of any sentence he receives in the state prosecution.[2]

17  *Johnson v. Gill*, 883 F.3d at 764-765; *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir. 1991).

18  **C.      Sentencing Recommendation**

19  **1.      Victim impacts**

20  Carrillo's conduct resulted in permanent adverse consequences for the victims.  The surviving

21  security guard must cope with permanent residual physical injuries and the toll of experiencing the

22  attack itself.  The siblings and extended family members of the deceased security guard are devastated.

23  The government requests that the Court allow victims and members of the victims' families and loved

24  ones to address the Court at the sentencing hearing, if they so desire, so that they can express to the

25  Court the extreme anguish they have suffered because of the defendant's crimes.

26  ///

27

28  _____

[2] The next hearing scheduled in the state prosecution is a status conference on June 20, 2022.

1    **2.      Section 3553(a) factors**

2        **(i)      The nature and circumstances of the offense**

3        The nature of Carrillo's offense conduct involves an attack on social order by means of a murder

4    intended to spark civil unrest.  To do so, Carrillo planned and carried out a killing in a particular place

5    and time, and he targeted the victims because he perceived them to be government officers or

6    employees.  Murdering another person in cold blood is by definition a horrific crime, but in this case,

7    Carrillo's killing of one guard and wounding of another was not only coldly calculated to lead to the loss

8    of life but was also intended to tear at the social fabric of this country.  Carrillo acknowledges the very

9    serious nature and circumstances of his offense conduct.

10        **(ii)      The defendant's history and characteristics**

11        Carrillo is 34 years old and prior to his arrest resided in Ben Lomond, California.  He served in

12    the United States Air Force from 2009 until the time of the offense conduct in this case.  When he

13    enlisted, Carrillo swore an oath to support and defend the Constitution against all enemies foreign and

14    domestic and to bear true faith and allegiance to the same.  He received a less than honorable discharge

15    after his arrest.  Prior to that point, Carrillo's Air Force record was exemplary.

16        In addition to his years of exemplary military service, Carrillo has no criminal history prior to the

17    events giving rise to this case and the state prosecution in Santa Cruz County.

18        The PSR documents other events in Carrillo's life including the untimely death of his spouse,

19    childhood traumas, and difficult experiences while serving in the Air Force.

20        By late December 2020, Carrillo contacted the government to communicate his acceptance of

21    responsibility and willingness to plead guilty to spare the victims and their families from protracted

22    litigation including a trial.

23        **(iii)      The need to reflect the seriousness of the offense**

24        Planning and carrying out this crime involved extremely serious conduct.  The assault and

25    murder were premeditated.  Carrillo and Justus followed a number of preparatory steps before the shots

26    were fired, including coordinating their travel and communications and conducting reconnaissance by

27    vehicle and on foot on the night of the attack.  The shooting involved the use of deadly force against

28    both security guards.  After the attack, Carrillo and Justus immediately left the area and took steps to

1  evade detection from authorities.  The recommended sentence reflects the seriousness of the offense.

2  **(iv)    The need to promote respect for the law**

3  Carrillo's conduct showed an extreme lack of respect for the rule of law.  Here, Carrillo's

4  conduct went beyond a deadly shooting of two security guards, one of whom died as a result.  In order to

5  carry out this crime, Carrillo effectively renounced his Air Force oath when he carried out a domestic

6  attack on the government.  He attacked a seat of the judicial branch, the place to which society looks for

7  the settlement of disputes.  Carrillo's attack on two security guards securing this public place central to

8  the administration of justice highlights the need for the sentence to promote respect for law.  Carrillo

9  also advocated for attacks on law enforcement in social media posts before and after the attack at the

10  courthouse.  A 41-year prison term will promote respect for the law.

11  **(v)    The need for just punishment**

12  Carrillo shot and killed one of the security guards and wounded the second guard because they

13  were law enforcement, and he inflicted emotional and physical trauma on the other victims in this case.

14  The consequences of Carrillo's conduct on the victims are permanent.  Carrillo's offense conduct was

15  deliberate, planned carefully, and reliant on his ability to use deadly force, something for which he

16  received training while in the Air Force.  A 41-year term of imprisonment punishes Carrillo's conduct.

17  **(vi)    The need for general and specific deterrence**

18  The need for both general and specific deterrence is strong.  A 41-year term of imprisonment

19  incapacitates Carrillo from future attempts of any acts of violence.  This sentence will also signal to any

20  like-minded individuals that they will be swiftly and severely punished for such conduct.  The United

21  States is mindful that this sentencing hearing is just over two years from the date of Carrillo's violence

22  in Oakland.  Two years from date of the crime to sentencing hearing is a rapid disposition for this type

23  of criminal conduct, providing a more proximate signal of deterrence.

24  **(vii)    The need for protection of the public**

25  The 41-year prison term the parties have agreed to will protect the public.  For the next few

26  decades, Carrillo will be in prison, unable to carry out any acts that could be intended to foment social

27  disorder.  Carrillo's early acceptance of responsibility in December 2020, and his consistent statements

28  since that time, including the colloquy with the Court at the change of plea hearing, indicate that the 41-

SENTENCING MEMORANDUM                    7
CR 20-265 YGR

1   year sentence will protect the public.

2   **(viii)    Avoiding unwarranted sentencing disparities**

3   The government's recommended sentence will not result in sentencing disparities.  According to

4   the Judiciary Sentencing Information (JSIN) maintained by the United States Sentencing Commission,

5   analyzing the 57 offenders during the last five fiscal years sentenced under Guideline §2A1.1 with a

6   Final Offense Level of 43 and a Criminal History Category of I, the median term of imprisonment was

7   470 months and the average length of imprisonment was 420 months.  These search results are available

8   at https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

9   The parties agreed to a sentence of 492 months here, which is above the national average and

10   median sentences given to similarly situated offenders.

11   **(ix)    The need to provide restitution to victims**

12   The United States is informed and believes that one or more victims intend to submit restitution

13   claims in this case.  The United States has notified the victims of their right to submit restitution claims

14   before this hearing.  At the time of this filing, however, the United States has not received the claims.

15   When any claims are received, the United States will submit them to the Court.  Therefore, the

16   government defers further discussion of restitution claims pending their receipt.

17   **VI.    Conclusion**

18   This is a tragic case for the victims, their family and friends, and for the community, which in

19   this case includes the Bay Area but also the entire nation.  An active-duty member of an armed forces

20   service murdered a law enforcement officer and wounded another in an attempt to create social disorder.

21   At an early point in these proceedings, however, Steven Carrillo accepted responsibility for his actions

22   on May 29, 2020.  The parties' plea agreement followed.  The recommended sentence provides a path

23   forward to closure -- for the parties, those affected by Carrillo's conduct, and the broader community.

24   For all of these reasons, the United States recommends that the Court impose the agreed 41-year

25   ///

26   ///

27   ///

28   ///

SENTENCING MEMORANDUM                           8
CR 20-265 YGR

1 | term of imprisonment, to be followed by a lifetime term of supervised release.

2

3 | DATED:  May 20, 2022                                    Respectfully submitted,

4                                                          STEPHANIE M. HINDS
                                                           United States Attorney
5

6                                                          /s/ *Jonathan U. Lee*

7                                                          _____

8                                                          JONATHAN U. LEE
                                                           Assistant United States Attorney